CINCINNATI GAS & ELECTRIC COMPANY, APPELLEE, *v.*
ARNOLD ET AL., APPELLANTS.

[Cite as Cincinnati Gas & Electric Co. v. Arnold (1978),
55 Ohio App. 2d 261.]

(No. C-76813—Decided January 11, 1978.)

*Messrs. Rich, Pott, Wetherell, Foster & Miller,* for
appellee.

*Messrs. Rendigs, Fry, Kiely & Dennis* and *Mr. John
W. Hust,* for appellants.

*Per Curiam.* This cause came on to be heard upon the
appeal; the transcript of the docket, journal entries and
original papers from the Court of Common Pleas of Ham-
ilton County, Ohio; the transcript of proceedings; and
the assignments of error, the briefs and arguments of
counsel.

In April 1972, defendants Joy Acres Mobile Homes
and its several owners commenced construction of a 78-
lot mobile home park near Morrow, Ohio. As part of its
construction plans, the appellants agreed to grant to the

plaintiff-appellee utility company a right-of-way for the construction of a gas main extension line which, it was contemplated, would provide natural gas service to all of the proposed mobile home sites. In addition, defendants purchased from the plaintiff 78 gas light meter bases which were to be installed at each of the proposed sites in connection with such gas service, and which were delivered to the defendants in June 1972. Thereafter, in August 1972, the plaintiff, in view of an impending statewide natural gas shortage, filed an application with the Public Utilities Commission of Ohio (PUCO) requesting that it be permitted to suspend its gas main extension policy applicable to, *inter alia*, the defendant's construction project. On September 14, 1972, the PUCO entered an order granting the plaintiff's request; whereupon, the plaintiff issued an "Information and Operations Bulletin" declaring that natural gas service requiring the construction of gas main extension lines would not be provided to those construction sites which did not attain a "ready" status by December 1, 1972. Inclement weather slowed the progress of the defendants' construction work during the ensuing months and permitted them to complete only 32 of the proposed 78 mobile home sites by the plaintiff's December deadline. Accordingly, the plaintiff approved and later installed a gas main extension to serve the 32 completed sites, and cancelled gas service to the unfinished remainder of the park.

Subsequently, the plaintiff, having earlier refused the defendants' request to take back the 46 meter bases left unused as a result of the partial cancellation of gas service to the park, brought this action against the defendants to recover the agreed purchase price of all 78 meter bases originally delivered, for which the plaintiff had received no payment. The defendants, in addition to raising various defenses to the plaintiff's claim in their answer, asserted a counterclaim against the plaintiff for the specific performance of the latter's contractual obligation to furnish natural gas service to the entire mobile home park, and for compensatory damages allegedly suffered as a result of the plaintiff's continuing breach of such obligation.

Trial of the several claims was had, and the trial court entered a judgment awarding damages to the plaintiff totalling the purchase price of the 32 meter bases actually used by the defendants, ordering the return of the remaining 46 meter bases to the plaintiff at the plaintiff's expense, and denying the counterclaim asserted by the defendants herein. The defendants timely filed this appeal, asserting in their two assignments of error that the trial court's denial of their counterclaim was contrary to law.

We disagree, finding the instant case to be essentially indistinguishable from that posed to the Supreme Court of Ohio in *State, ex rel. Northern Ohio Telephone Co.*, v. *Winter* (1970), 23 Ohio St. 2d 6. In that case, as here, a disgruntled utility customer asserted a claim in the Court of Common Pleas for equitable relief to prevent the utility's discontinuation of service in accordance with an order of the PUCO, and for damages allegedly resulting from the utility's failure to properly provide such service. The Supreme Court, in granting a writ of prohibition to halt the action, held that a Court of Common Pleas was not empowered to hear such a claim since "The General Assembly, by the enactment of statutory provisions requiring a public utility to file and adhere to rate schedules * * * and providing a detailed procedure for service and rate complaints, has lodged exclusive jurisdiction in such matters in the Public Utilities Commission, subject to review by the Supreme Court." (Paragraph 1 of the syllabus.) See also *Inland Steel Development Corp. v. Pub. Util. Comm.* (1977), 49 Ohio St. 2d 284.

To allow a Court of Common Pleas, through the exercise of its equitable powers, to order the restoration of utility service to a customer when such service has been denied as the direct result of a PUCO order, the court observed, would in effect permit such a court to review and suspend the operation of orders of the PUCO in direct contravention of R. C. 4903.12, which provides, in part:

"No court other than the Supreme Court shall have power to review, suspend or delay any order made by the public utilities commission * * *."

*State ex rel. Northern Ohio Telephone Co. v. Winter,*

264

*supra,* at pages 9 and 10. See also *Inland Steel Development Corp.* v. *Pub. Util. Comm., supra,* at 288-89.

Thus, it is perfectly clear that a Court of Common Pleas is without power to order that utility service be supplied to a claimant, in complete disregard of an order of the PUCO, under the guise of granting the claimant some form of equitable relief. It is equally clear, then, that the trial court in the instant case properly denied that portion of the defendants' counterclaim demanding that the plaintiff be required to specifically perform its contractual obligation to supply natural gas service to the defendants' entire mobile home park.

However, the authority of a Common Pleas Court to hear and determine a claim for damages against a utility company flowing directly from the latter's denial of service pursuant to an order of the PUCO has, according to our research, been neither affirmatively established, nor has it been *expressly* denied by the courts of this state. It may , however, fairly be inferred from the Supreme Court's decision in *Winter, supra,* which, while directed primarily to the injunctive aspect of the relief sought in the trial court, concluded that the court "lacked subject matter jurisdiction over the instant controversy," which controversy included prayers for compensation and damages for inadequate service and unreasonable rates.

Certainly, it may be said that the Supreme Court of Ohio has been zealous in guarding the exclusivity of its power to review the operation and effect of PUCO orders, and has done so in absolute and adamant terms:

"The refusal of service by a public utility is a matter which is in the exclusive jurisdiction of the commission, subject to an appeal to this court."[1]

"Only this court has the power to review, suspend, delay or restrain orders of the commission. * * * The General Assembly has provided a comprehensive plan by which subscribers may contest the reasonableness of rates, rules, regulations and quality of service of a public utility,

---

[1]*Inland Steel Development Corp.* v. *Pub. Util. Comm., supra,* at 288.

which plan 'does not include proceedings in the Court of Common Pleas.''[2]

As this Court noted in *Cincinnati & Suburban Bell Telephone Co.* v. *Rhoades* (1933), 45 Ohio App. 40, 44, such language "in effect holds that there is no right or power in a court inferior to the Supreme Court of Ohio to entertain an action *which in any way interferes with the finding of the commission.*" (Emphasis added.)

It seems to us clearly arguable that an action seeking damages for breach of contract from a utility company which denies service to a customer pursuant to a PUCO order does not significantly differ in its effect from an action for equitable relief seeking to enjoin or otherwise suspend compliance with such an order; both types of actions operate, either directly or indirectly, to compel or encourage a utility's noncompliance with the PUCO order in question. Thus, if the exclusivity of the Supreme Court's power to review and suspend PUCO orders is to be preserved inviolate, a Court of Common Pleas ought, in consistency, to be denied jurisdiction over the subject matter of either type of claim, and the trial court's denial of the defendants' claim for damages would, therefore, have been required in the instant case as a matter of law.

However, even if we were to decide that the trial court properly assumed jurisdiction of the defendants' counterclaim for damages only, we would find no error in the court's disposition of the claim at trial. The state clearly has the authority to exercise its police power, through the orders of its regulatory agencies, to modify or suspend contractual rights and obligations when necessary to serve the public welfare. *City of Akron* v. *Pub. Util. Comm.* (1948), 149 Ohio St. 347; *Inland Steel Development Corp.* v. *Pub. Util. Comm., supra.* Thus, when parties contract with reference to a subject within the regulatory power of the state, there is incorporated into their contract an implied term that its provisions are subject to the state's exercise of that power. *City of Akron* v. *Pub.*

[2]*State, ex rel. Northern Ohio Telephone Co.,* v. *Winter, supra,* at 9.

*Util. Comm., supra; Allen* v. *Shaker Heights Savings Assn.* (1941), 68 Ohio App. 445.

The defendants in the instant case, therefore, must be held to have contemplated that their rights and remedies might be modified, as they were, by an order of the PUCO precluding the plaintiff's intended extension of natural gas service to the defendants' entire mobile home park, and that the plaintiff might therefore be excused from responding in damages for any resulting nonperformance of the contract. The defendants attempt to escape the thrust of such a rule by arguing that the plaintiff herein is estopped to assert the PUCO order as a defense to the instant action for breach of contract since the order was issued upon the plaintiff's application therefor. However, we conclude that considerations of public policy, if nothing else, require that we decline to follow defendants' argument to its logical conclusion. Thus, the application for an amendment of its gas main extension policy was the single avenue of relief legally available to the plaintiff which, at the time it filed the application, was confronted with, on the one hand, its statutory duty to "furnish necessary and adequate service" to its customers (R. C. 4905.-22) and, on the other hand, a rapidly dwindling supply of natural gas available to serve such customers, a circumstance which manifestly dictated measures to relieve an unqualified duty to supply gas service. See R. C. 4909.17 and R. C. 4909.18. Once its application was filed, however, the plaintiff's role in the ensuing statutory proceedings was reduced to that of an interested party whose request for relief would be granted only upon the PUCO's independent and impartial determination, following a full public hearing, that the proposed suspension of the plaintiff's gas main extension policy would best serve the public interest. R. C. 4909.18. No claim is made that the PUCO's ultimate disposition of the application in favor of the plaintiff was tainted by procedural irregularities, was based on improper or insufficient evidence, or was otherwise not in accordance with law. Given these circumstances, we agree with the trial court that the PUCO order granting

the plaintiff's application legally excused the plaintiff from full performance of its contract with the defendants, and that the defendants' claim for breach of contract must, therefore, be denied.

The defendants' additional contention—that the PUCO order of September 14, 1972, authorizing the plaintiff's suspension of its gas main extension policy, was superseded by an order entered by the commission on July 6, 1973, allegedly extending the defendants' deadline for attaining "ready" status to October 1, 1973—is meritless. The latter order, as the record uncontrovertedly demonstrates, was directed to the plaintiff's policy with respect to new tap-ins to *existing* gas mains, and did not affect the plaintiff's policy, applicable here, regarding the new construction of gas main extensions.

The defendants' two assignments of error, being without merit, are accordingly overruled.

*Judgment affirmed.*

PALMER, P. J., KEEFE and BETTMAN, JJ., concur.