THE STATE OF OHIO, APPELLEE, *v.*
BROWN, APPELLANT.

(No. 81AP-619—Decided June 8, 1982.)

*Mr. Michael Miller,* prosecuting attorney, and *Mr. Alan C. Travis,* for appellee.

*Mr. James Kura,* county public defender, and *Mr. W. Curtis Stitt,* for appellant.

NORRIS, J. Defendant-appellant, Thomas R. Brown, appeals from his convictions in the Court of Common Pleas of Franklin County for the crimes of involuntary manslaughter and endangering children.

On November 5, 1980, defendant was babysitting for Tammera Stackpool, the four-month-old daughter of Carla Stackpool, the woman with whom defendant was living at the time. The baby was burned when defendant immersed her in hot water.

A hospital emergency room attendant testified that defendant told him that he had placed one hand under the child's neck and the other under her knees and had placed her into bath water, and that, when she screamed, he immediately pulled her out of the water and rubbed some ointment on her body. When Mrs. Stackpool returned from work about two and one-half hours later, the baby was taken to the hospital.

Phillip Knight, M.D., a pediatric surgeon, testified that he examined the baby late on November 5, and examined her everyday thereafter until her death ten days later; that seventy to seventy-five percent of the baby's body was covered with burns, with only both hands,

part of her upper forearms, her right foot and ankle, the sole of her left foot, and a portion of her neck escaping the burns; that the burns on her abdomen, chest, and lower back, were third-degree burns (the most serious type), while the rest were deep second-degree burns; that defendant told him that he had cradled the baby in his hands when inserting her into the water, but that defendant's hands were not burned; and that the cause of death was from the burns sustained by the baby.

At the conclusion of the state's case, the trial court overruled defendant's motion for an order of acquittal made pursuant to Crim. R. 29.

Following defendant's case, and instructions to the jury to which defendant objected, he was found guilty of both charges by the jury and sentenced by the trial judge on both, with the sentences to be served concurrently.

Defendant raises three assignments of error:

"1. An accused is denied fundamental fairness and his right to due process of law under the Fifth and Fourteenth Amendments where the trial court gives the jury an improper, misleading and confusing instruction which charges the jury to apply the civil preponderance of the evidence standard rather than the criminal standard of proof beyond a reasonable doubt.

"2. The trial court erred by entering a judgment of conviction for both Count I (endangering children) and Count II (involuntary manslaughter) where conviction on both offenses is contrary to Ohio Revised Code Section 2941.25(A) and Fifth and Fourteenth Amendments' guarantees against double jeopardy.

"3. An accused is denied due process of law as guaranteed by the Fifth and Fourteenth Amendments to the Constitution where the trial court erroneously overrules a defense motion for acquittal where the state failed to establish all of the elements of the offense charged beyond a reasonable doubt."

The trial court's instruction, to which defendant objects, follows:

"Questions have been asked in this instance of expert witnesses [sic], and he was asked to assume certain facts were true and give an opinion based on that assumption. You must determine the assumed facts which the expert based his opinion on are true, if any assumed fact was not established by a preponderance of the evidence, you will determine the effect of that failure on the value of the opinion of that expert.

"Now, in that regard, you will not, and I use the words preponderance of the evidence. A preponderance of the evidence is a different degree of proof than is beyond a reasonable doubt. A preponderance of the evidence is the greater weight of the evidence.

"That need not be by the number of witnesses testified, but by the quality of the evidence itself. Preponderance is less than the beyond a reasonable doubt. Preponderance of the evidence is that side which you are more likely to find to be the truth. That is the greater weight of the evidence is the preponderance."

The trial court apparently utilized a standard form of jury instruction intended for civil cases. It is interesting to note that the corresponding standard instruction recommended for use in criminal cases is silent regarding any burden of proof applicable to facts underlying opinion testimony. See Ohio Judicial Conference, Ohio Jury Instructions (1981), Section 405.51 (2).[1]

---

[1] Actually, it might be best if the burden of proof standard was omitted from the civil instruction. It is not necessary that a preponderance of the evidence supports the assumed facts underlying an expert's opinion testimony. What is necessary is to present evidence of the underlying facts that is of such a caliber as will convince the jury that the expert's answer is entitled to great credence because it was in response to a hypothetical

Because an accused in a state criminal prosecution has a constitutional right to expect that all the facts necessary for his conviction will be established by proof beyond a reasonable doubt (*In re Winship* [1970], 397 U.S. 358, at 364), it was error for the trial court to instruct the jury on any other burden of proof. Nevertheless, the state contends that the error was not prejudicial to defendant's cause.

Ordinarily, the test of harmless error is whether or not the error affects the substantial rights of the accused. Crim. R. 52 (A). But, where violation of a federal constitutional right is involved, for an error to be regarded as harmless, it must be shown beyond a reasonable doubt that the error complained of did not contribute to the verdict. *Chapman* v. *California* (1967), 386 U.S. 18; *State* v. *Smith* (1979), 58 Ohio St. 2d 344 [12 O.O.3d 313], at 349.

In order for us to find that the error was harmless beyond a reasonable doubt, then, we must be able to declare a belief that there was no reasonable possibility that the error contributed to defendant's conviction. *State* v. *Lytle* (1976), 48 Ohio St. 2d 391 [2 O.O.3d 495]. This we are unable to do because, under the circumstances of this case, a credible argument exists that the instruction caused the jury to confuse the burden of proof necessary for defendant's conviction.

The gravamen of the charge against defendant for endangering children was that he created a substantial risk to the health of the child by violating a duty of care. Dr. Knight's opinion testimony went to the ultimate facts to be determined by the jury, as can be readily seen from this interchange between the doctor and the prosecuting attorney:

"Q. Did he tell you how he put the baby in the water?

"A. I asked him specifically about the circumstances of the baby being burned, and I asked him how he held the baby, and he said that he was cradling the baby with one hand under the knees and one under the arms and back.

"Q. Doctor, concerning the burns on Tammera that you have seen and considering the range of water temperature and/or duration required to cause burns of that severity, if an adult would immerse his hands in that water at that temperature and for that duration, would it cause burns on an adult's hands and wrists?

"A. Yes, it would.

"* * *

"Q. Did you look at Mr. Brown's hands or wrists?

"A. Yes, I did.

"Q. Why did you do that?

"A. Because I asked him how he was holding the baby, and there were great questions about how these injuries occurred to the baby, and I wanted to find out whether he was telling me something that was inconsistent, and I was looking at his hands and arms and skin, and they were absolutely normal * * *.

"Q. No burns whatsoever on his hands?

"A. That's right.

"* * *

"Q. * * * Doctor, considering your observations of Tammera Stockpool [*sic*], the seriousness of her burns and distribution of her burns, and considering your observation of Thomas Brown and his lack of burns, the story he told you about how they occurred, was that consistent with the physical evidence you observed?

"A. No, it is not.

"Q. Could it happen that way?

"A. No."

In this context, the seriousness of the error is readily apparent; because the trial

---

question which was based upon true facts. The purpose of a jury instruction on this point is simply to assist the jury in assessing the amount of credence it will give to the opinion- answer of the expert. It should tell the jury, in effect, that the opinion is only as good as the assumed facts upon which it is based.

court in its charge otherwise talked in terms of proof beyond a reasonable doubt, the jury could easily be confused by the instruction in question and conclude that a lesser degree of proof was required insofar as the expert's testimony on the ultimate facts was concerned. Or, in view of the question quoted above having referred to the underlying fact of defendant's "story," the jury might conclude from the instruction that defendant was saddled with the burden of proving his version by a preponderance of the evidence.

The first assignment of error is sustained.

In his second assignment of error, defendant argues that he could not be convicted of both involuntary manslaughter and endangering children because proof of the latter offense does not require proof of any element not required to be proved for the former.

Three sections of the Revised Code are relevant to our inquiry:

R.C. 2903.04 (A) (involuntary manslaughter):

"No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a felony."

R.C. 2919.22 (endangering children):

"(A) No person, being the * * * person having custody or control, or person in loco parentis of a child under eighteen * * * shall create a substantial risk to the health or safety of such child, by violating a duty of care, protection, or support. * * *

"* * *

"(C) * * * If a violation of this section results in serious physical harm to the child involved, * * * endangering children is a felony of the fourth degree."

R.C. 2941.25 (multiple counts):

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but

the defendant may be convicted of only one.

"(B) Where the defendant's conduct * * * results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

Defendant's conduct was relied upon by the state for two purposes: first, as a violation of R.C. 2919.22 (endangering children), and, second, as the felony underlying the involuntary manslaughter charge.

Pursuant to R.C. 2941.25, the first step in our analysis must be to determine whether or not defendant's conduct can be construed to constitute two allied offenses of similar import. If, under the circumstances of this case, defendant's conduct was such that it can be construed to have resulted in two offenses of dissimilar import, then the inquiry is concluded and defendant may be convicted of both involuntary manslaughter and endangering children. If the defendant's conduct constituted two allied offenses of similar import, then defendant could be convicted of only one of the crimes unless it is determined that defendant's conduct resulted in two offenses of the same or similar kind committed separately or with a separate animus as to each. If they were so committed, then they cannot be allied offenses and defendant may be convicted of both. If, however, the offenses were committed together with a single animus, then they are allied offenses and defendant could be convicted of only one. See *State* v. *Moralevitz* (1980), 70 Ohio App. 2d 20 [24 O.O.3d 16].

R.C. 2941.25 (A) was designed by the General Assembly to prohibit duplication of punishment where both crimes are motivated by a single purpose and where conviction of both would be dependent upon identical conduct and the same evidence. Accordingly, in order for there

to be allied offenses of similar import, under the circumstances of this case, we must determine that: (1) the state relies upon the same conduct to support both offenses; (2) that the offenses and their elements correspond to such a degree that commission of one of the offenses (here, the graver offense of involuntary manslaughter) will result in the commission of the other (here, the lesser offense of endangering children); and (3) that the commission of both offenses was motivated by the same purpose. *State* v. *Logan* (1979), 60 Ohio St. 2d 126 [14 O.O.3d 373]; *State* v. *Donald* (1979), 57 Ohio St. 2d 73 [11 O.O.3d 242].

Here, there can be no doubt that the state relied upon the same conduct as the basis for both offenses, a point conceded by the state in its brief. Similarly, there is no evidence that defendant was motivated by more than one purpose. And, in order to prove the defendant guilty of the greater offense of involuntary manslaughter, the state was required to prove the elements of the specified underlying felony of endangering children. Clearly, the same conduct of the defendant can be construed to constitute two allied offenses of similar import.

Because the state concedes that "[t]here is no indication that the conduct below was committed separately," R.C. 2941.25 (B) has no application to this case.

Pursuant to Crim. R. 32 (B), a judgment of conviction must set forth the verdict and the sentence. Because the trial court's entry of judgment included a sentence for both crimes, it is irrelevant that it was provided that the sentences were to be served concurrently; for purposes of R.C. 2941.25, defendant has been convicted of both offenses, in violation of that section. The second assignment of error is sustained.

Defendant asserts, by his third assignment of error, that the trial court erred in overruling his motion for a judgment of acquittal made pursuant to Crim. R. 29.

At the outset, we reject defendant's contention that evidence on the cause of the child's death could come only from the coroner's office. Dr. Knight's testimony on that point was adequate, and no objection was made by defendant at trial as to Dr. Knight's qualifications as an expert witness.

Pursuant to Crim. R. 29 (A), a court may not order an acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261 [9 O.O.3d 403]. In other words, it is only where reasonable minds could not fail to find reasonable doubt that a motion for judgment of acquittal under Crim. R. 29 (A) should be granted.

Applying this test to the case before us, we find that there was sufficient evidence at the close of the state's case upon which reasonable minds could conclude that defendant was guilty of both involuntary manslaughter and endangering children. The third assignment of error is overruled.

The first and second assignments of error are sustained, the third assignment of error is overruled, the judgment of the trial court is reversed, and this case is remanded to the trial court for a new trial.

*Judgment reversed and*
*case remanded for new trial.*

WHITESIDE, P.J., and MCCORMAC, J., concur.