SHEETS, et al., Appellees,

v.

NORFOLK SOUTHERN CORPORATION et al., Appellants.

HALL, Adm., Appellee,

v.

NORFOLK & WESTERN RAILWAY COMPANY et al., Appellants.

[Cite as *Sheets v. Norfolk S. Corp.* (1996), 109 Ohio App.3d 278.]

Court of Appeals of Ohio,
Third District, Seneca County.

Nos. 13–95–7, 13–95–8.

Decided Feb. 12, 1996.

*Gallagher, Sharp, Fulton & Norman, Thomas E. Dover, Kevin C. Alexander-sen* and *Timothy J. Fitzgerald,* for appellants.

*Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, L.P.A.,* and *Fredric G. Levin; Landskroner & Phillips Co., L.P.A.,* and *Christian R. Patno; Fritz Byers,* for appellees Troy Dugger, Administrator of the estate of Paula Lacy, and Walter Sheets, Administrator of the estate of Tonya Sheets.

*Christopher Knight,* for appellee Shirley Hall, Administrator of the estate of Michael A. Lacy.

SHAW, Judge.

Defendants-appellants, Norfolk Southern Corporation and Norfolk & Western Railway Company (collectively, "defendants"), appeal from a judgment entered in the Seneca County Court of Common Pleas, awarding damages for wrongful

death to plaintiffs Walter Sheets, Troy Dugger and Shirley Hall, as administrators of the estates of Tonya Sheets, Paula Lacy, and Michael Lacy, respectively. Initially, plaintiffs Sheets and Dugger filed suit separately from plaintiff Hall. However, both cases were consolidated by the trial court for purposes of trial. In addition, this court consolidated both cases for purposes of briefing and oral argument.

Defendants' appeal arises from a collision between an automobile and a train which occurred on May 12, 1991. On that date, a pickup truck being operated by Michael Lacy was struck at a railroad crossing on Township Road 76 in Seneca County, Ohio. Michael Lacy and his passengers, Paula Lacy and Tonya Sheets, were killed when the truck was struck by a train owned and operated by defendants.

Following a jury trial, the jury returned a verdict finding that the negligence of both defendants and decedent Michael Lacy was the proximate cause of the collision and the three deaths. The jury further found in favor of defendants on plaintiffs' claims of spoliation of evidence and claims for punitive damages. The jury awarded compensatory damages in the amount of $1,005,230.96 to the estate of Michael Lacy, $1,254,491.54 to the estate of Paula Lacy and $2,503,016.57 to the estate of Tonya Sheets.

Thereafter, defendants filed the instant appeal, asserting the following nine assignments of error:

"I. The trial court erred when it permitted plaintiffs to introduce evidence of statistics regarding railroad grade crossing accidents.

"II. The trial court erred when it denied defendants' motion for summary judgment and for a directed verdict on the issue of punitive damages.

"III. The trial court erred when it denied defendants' motion to bifurcate the punitive damage and spoliation claims from the trial.

"IV. The trial court erred when it denied defendants' motions for summary judgment and for a directed verdict on the claim of spoliation of evidence.

"V. The trial court erred when it denied defendants' motions for summary judgment regarding the claims of negligence against the defendants which have been federally preempted.

"VI. The trial court erred when it permitted plaintiffs to introduce evidence regarding the slope of a railroad crossing and a federal statute regarding the placement of gates and flashers at railroad crossings.

"VII. The jury's verdict was the result of passion and prejudice due to the gross misconduct of plaintiffs' counsel during closing arguments.

"VIII. The jury's verdict, which awarded damages in excess of $2.5 million to the estate of Tonya Sheets, was excessive.

"IX. The trial court erred when it instructed the jury that the law requires a railroad to blow the train's whistle continuously upon its approach to a railroad crossing."

The record reveals that on May 12, 1991, Michael Lacy, Paula Lacy and Tonya Sheets were passengers in a pickup truck which was being operated by Michael Lacy. At approximately 8:30 p.m., the pickup truck stood idle in front of a two-track railroad crossing on Township Road 76 while waiting for a train to pass. The railroad crossing had no gates, flashing lights or other warning devices and was marked only by crossbucks and a yellow and black advance warning sign.

As plaintiffs' decedents waited at the crossing, train No. 146, which was owned and operated by defendants, passed slowly through the intersection eastbound on the northern track, which was closest to their pickup truck. After train number 146 cleared the intersection, plaintiffs' decedents began to move through the crossing and pass behind the eastbound train. As the pickup truck began to cross the southern track, it was struck by train No. 233, which was traveling at approximately forty-five miles per hour on that track. Apparently, the slow-moving train No. 146 created an obstruction which prevented plaintiffs' decedents from either hearing or seeing train No. 233 as it traveled west on the southern-most track. The impact of the collision killed all three occupants of the pickup truck.

In defendants' first assignment of error, they claim that the trial court erred in allowing plaintiffs to introduce evidence of railroad grade crossing statistics from 1985 through 1991. In substance, defendants argue that the introduction of such statistics was reversible error because they were irrelevant and prejudicial pursuant to Evid.R. 401, 402 and 403. The record indicates that on November 21, 1994, defendants filed a motion *in limine* in the trial court seeking to exclude evidence of these grade crossing accident statistics. On the same date, the trial court granted the motion and prohibited the admission of the statistical evidence. The record indicates that the trial court initially ruled that the statistical data in question would not be admissible because the data was not relevant to the specific crossing or collision at issue. In its ruling however, the trial court cautioned the parties that if the issue of defendants' safety record was raised by defendants, then the statistical evidence would be admissible for purposes of cross examination.

During opening statements, counsel for the defendants made the following remarks:

"Mr. Dover: * * * But, I think the evidence is gonna demonstrate that everything that the railroad did on May 12, 1991, was done in the same way and done in the same manner as every railroad in the United States. * * * This railroad crossing is similar to many other rural crossings in the area that just have crossbucks. * * * Railroad grade crossing safety is a concern for railroads, not only in Ohio but in all states that the railroad operates. Railroad grade crossing safety is a national problem in this case. * * * Because it's a national problem the Norfolk & Western Railway Company and the Norfolk Southern Corporation, they work with the state governments and the federal government under a federal program for a federal scheme to determine which grade crossings should have flashing lights and gates.

"It's the same program that all railroads in this company operate. The evidence is gonna demonstrate that the [defendants] operate in the same manner as the other major railroads."

As a consequence of these statements, the trial court eventually ruled that defendants had "opened the door" to the issue of comparative railroad safety and thus permitted plaintiffs to introduce evidence of grade crossing accident statistics from 1985 through 1991.

■ With respect to the admission and exclusion of evidence at trial, it is axiomatic that such decisions are within the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343. Moreover, a reviewing court should not interfere with such decisions unless the trial court has clearly abused its discretion and the defendant has been materially prejudiced thereby. *State v. Grunden* (1989), 65 Ohio App.3d 777, 784, 585 N.E.2d 487, 492.

The record reveals that the trial court was very clear in its admonition to defense counsel with respect to "opening the door" to plaintiffs' proffered statistical evidence. Nevertheless, as noted above, counsel for defendants brought up the issue of comparative safety on a number of occasions during opening statements. Moreover, on at least one other occasion, defense counsel elicited testimony from a witness concerning the issue of grade crossing safety. For example, during cross-examination of Deputy William Herrig of the Seneca County Sheriff's Department, defense counsel proceeded with the following line of questioning:

"Mr. Dover [Defense Counsel]: You don't have any knowledge of prior accidents at this crossing before May 12th of 1991, do you?

"Mr. Herrig [Witness]: No, sir, I do not.

"Mr. Dover: And you never received any complaints about that crossing from the local citizens in the area, did you?

"Mr. Herrig: No, sir, I did not receive any.

"Mr. Dover: You do receive complaints now and then, do you not, from local citizens about trains blocking crossings and things of that nature?

"Mr. Herrig: Yes, sir, that is correct.

"Mr. Dover: But you don't recall receiving any complaints about this particular crossing do you?

"Mr. Herrig: No.

"Mr. Dover: In fact, you don't recall receiving any complaints from the local citizens about the blocking of crossings from Old Fort to Green Springs, do you?

"Mr. Herrig: Not that I can recall."

In reviewing defendants' opening statements along with the above line of questioning, we believe that defendants clearly opened the door to a comparison of the safety record at this particular crossing with other crossings operated by defendants as well as crossings operated by other railroads throughout the country. Thus, based on the totality of the opening statement and trial testimony, we cannot say that the trial court abused its discretion in admitting the statistical data into evidence.

■ Furthermore, even assuming *arguendo* that the trial court erred in admitting the statistical evidence, we believe that the error was harmless and did not affect the substantial rights of the parties. Civ.R. 61. Defendants argue that the admission of the grade crossing statistics tainted the entire trial and that such evidence had a prejudicial effect on the jury's verdict. However, the record indicates that in its verdict, the jury rejected plaintiffs' claim for punitive damages and awarded only compensatory damages. Thus, we find no particular indication that the admission of this evidence had a prejudicial effect upon the jury's verdict. Accordingly, defendants' first assignment of error is overruled.

■ In defendants' second assignment of error, they assert that the trial court erred in denying their motions for partial summary judgment and for a directed verdict on the claims for punitive damages by the estates of Paula Lacy and Tonya Sheets. In substance, defendants argue that a punitive damage award instruction was not warranted because the property damage asserted on the part of these decedents was minimal and thus insufficient as a matter of law to support such an award.

■ The standards for a directed verdict and summary judgment are similar in that in each instance, the evidence being construed most strongly in favor of the party against whom the motion is directed, the motion must be overruled unless reasonable minds can only reach the conclusion that the movant is entitled

to judgment as a matter of law. The standards differ in that on a motion for summary judgment, the trial court must make the additional determination as to whether a genuine issue of material fact exists for trial. See *Rayburn v. J.C. Penney Outlet Store* (1982), 3 Ohio App.3d 463, 3 OBR 544, 445 N.E.2d 1167.

In addressing the award of punitive damages in an action for wrongful death, it is well established that there is no right to such damages unless it is proven that the decedent has suffered personal injury or property damage resulting from intentional, reckless or willful conduct resulting in death. R.C. 2315.21(B)(2); *Rubeck v. Huffman* (1978), 54 Ohio St.2d 20, 8 O.O.3d 11, 374 N.E.2d 411. In the instant case, plaintiffs submitted evidence demonstrating that decedents Paula Lacy and Tonya Sheets suffered property damage from the destruction of the clothing they were wearing at the time of the collision. In our view, despite the limited nature of decedents' loss of personal property, the trial court did not err in submitting the issue of punitive damages to the jury. See *Wightman v. Consol. Rail Corp.* (1994), 94 Ohio App.3d 389, 407, 640 N.E.2d 1160, 1172, (finding that R.C. 2315.21 does not require substantial actual damages to support an award of punitive damages).

Furthermore, regardless of the nature of the plaintiffs' actual damages, the issue of punitive damages was properly submitted to the jury independently and in conjunction with plaintiffs' claim for spoliation of evidence, as that claim was related to the claim that defendants acted unreasonably in operating its railroad. *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 635 N.E.2d 331.

█ Finally, we note that the jury in this case returned no separate verdict of punitive damages and instead awarded only compensatory damages. It is well established that "[a] party may not successfully complain of error unless he or his interests are prejudiced thereby." *Elser v. Parke* (1943), 142 Ohio St. 261, 27 O.O. 204, 51 N.E.2d 711, paragraph five of the syllabus. In the instant case, even assuming *arguendo* that the trial court committed error in this instance, that error was cured by the verdict in favor of defendants on this issue. *Reeg v. Hodgson* (1964), 1 Ohio App.2d 272, 277, 30 O.O.2d 293, 296, 202 N.E.2d 310, 315. Thus, regardless of the propriety of the punitive damage instruction, we find no indication from the jury's award that it was adversely influenced by the instruction or that the instruction had any impact on the jury's verdict. See *Wilburn v. Cleveland Elec. Illum. Co.* (1991), 74 Ohio App.3d 401, 599 N.E.2d 301. Accordingly, as we find no error in the trial court's submission of the punitive damage issue to the jury, the trial court's denial of summary judgment and a directed verdict on that issue was proper. Defendants' second assignment of error is overruled.

■ In defendants' third assignment of error, they argue that the trial court erred in denying its motions to bifurcate the punitive damage and spoliation claims from the trial. Defendants contend that the inclusion of these issues at trial created an atmosphere of hostility toward themselves and the railroad industry in general. Thus, defendants claim the trial was tainted because the jury was confused by the combination of these issues.

■ Civ.R. 42(B) provides that a trial court may order separate trials of separate issues whenever it will further convenience and judicial economy and avoid prejudice. The decision of whether or not to bifurcate the proceedings, however, is a matter within the sound discretion of the trial court. *Heidbreder v. Northampton Twp. Trustees* (1979), 64 Ohio App.2d 95, 18 O.O.3d 78, 411 N.E.2d 825. Therefore, absent an abuse of discretion, this court will not interfere with the trial court's ruling on the issue of bifurcation. Upon review of the record, we find nothing which indicates that the trial court's denial of defendants' motion to bifurcate was unreasonable, arbitrary or unconscionable. *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 24 O.O.3d 322, 436 N.E.2d 1008. Accordingly, defendants' third assignment of error is overruled.

■ In defendants' fourth assignment of error, they argue that the trial court erred in denying their motion for summary judgment and for a directed verdict on the plaintiffs' claim for spoliation of evidence. At trial, one of the allegations set forth by plaintiffs was that at some point following the collision, defendants intentionally destroyed dispatcher tapes containing communications between the involved train and the train dispatcher in Fort Wayne, Indiana. Defendants contend they should have been granted judgment as a matter of law on the issue of spoliation because there was no evidence that the tapes in question were willfully destroyed by the railroad.

■ In order to sustain a prima facie claim for spoliation of evidence, the following elements must be established: "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." *Smith v. Howard Johnson Co.* (1993), 67 Ohio St.3d 28, 29, 615 N.E.2d 1037, 1038.

At trial, plaintiffs' presented the testimony of defendants' in-house attorney, who stated that normally, such dispatcher tapes are pulled in a situation where litigation is anticipated. However, in routine situations where no litigation is anticipated, the dispatcher tapes are apparently reused or destroyed. In the instant case, defendants' in-house attorney testified that the dispatcher tapes constituted the only record of communication between the crew of the train and

the dispatcher on the night of the collision. Nevertheless, the record indicates that the dispatcher tapes were never produced by defendants, nor was an explanation given as to why the tapes were not preserved for trial.

 In our view, such circumstances presented a jury question as to whether the evidence was willfully destroyed by defendants. Accordingly, it is our conclusion that plaintiffs, at a minimum, satisfied their burden of establishing a prima facie case of spoliation. More importantly, however, the record is clear that the jury found in favor of defendants on the issue of spoliation of evidence. Thus, as is the case with defendants' second assignment of error, any alleged error on the part of the trial court was cured by the jury's verdict in favor of defendants on spoliation issue. *Elser v. Parke, supra,* 142 Ohio St. 261, 27 O.O. 204, 51 N.E.2d 711. Defendants' fourth assignment of error is overruled.

In defendants' fifth assignment of error, they claim that the trial court erred in denying defendants' motions for summary judgment, which asserted that plaintiffs' negligence claims had been preempted by federal law. Defendants contend that the jury found them liable in negligence, at least in part, on the basis of the train's lack of a caboose as a grade crossing safety measure as well as the train's improper operating speed. Thus, defendants argue that since the issues of train speed and use of cabooses are preempted by federal law, such issues were improperly raised at trial.

 A negligence claim against a railroad based upon the speed of its train is preempted by federal law. *CSX Transp., Inc. v. Easterwood* (1993), 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387. See, also, *Carpenter v. Consol. Rail Corp.* (1994), 69 Ohio St.3d 259, 631 N.E.2d 607. Moreover, a common-law tort action based upon a claim of inadequate warning devices is also preempted if federal funds have been expended for the installation of warning devices. *Freeman v. Norfolk & W. Ry. Co.* (1994), 69 Ohio St.3d 611, 635 N.E.2d 310.

 In the instant case, plaintiffs' claims relate to defendants' negligence in failing to use ordinary care in maintaining a safe railroad crossing. In pursuing these claims, plaintiffs' presented evidence at trial concerning the speed of the train along with evidence that the lack of a caboose may have contributed to the hazardous conditions at the crossing at issue.

In *Schofield v. Consol. Rail Corp.* (Sept. 16, 1993), Hardin App. No. 6–92–16, unreported, 1993 WL 360425 in addressing a similar situation, we stated:

"The Schofields did not claim that the speed of the train in and of itself constituted negligence on the part of Conrail. The jury's answer to the interrogatory concerning Conrail's negligence indicates that it did not find that the speed of the train constituted negligence; rather the jury found that the motorist's view and the crossing warning were inadequate for the allowable speed of the train.

"Since the Schofields do not claim, and the jury did not find, that the speed of the train constituted negligence, we hold that *Easterwood, supra,* does not apply to this case and that the Schofields' crossing claims are not pre-empted by federal law."

In addressing the issue of train speed in the instant case, our review of the record reveals that while train speed was mentioned at trial, plaintiffs never claimed that the speed of the train itself constituted an act of negligence. The speed of the train was addressed in the context that at the rate of speed this train was traveling, defendants were negligent in failing to warn plaintiffs of its arrival because of the *obstruction* created by the slower moving train. Moreover, neither the jury instructions nor the jury interrogatories addressed the issue of train speed itself as constituting an act of negligence on the part of defendants. Thus, there is no indication from the record that the jury independently considered the issue of speed in making its finding of negligence.

Additionally, with respect to the federal preemption of the caboose requirement, defendants point to no federal authorities which explicitly establish such a preemption. Nevertheless, even assuming *arguendo* that such a preemption exists, the plaintiffs again made no claim, nor did the jury find, that the failure to have a caboose in and of itself constituted negligence on the part of defendants. See *Schofield, supra.* Accordingly, based on the foregoing, defendants' contention that plaintiffs' claims are preempted by federal law is without merit. Defendants' fifth assignment of error is overruled.

██ In defendants' sixth assignment of error, they argue that the trial court erred in permitting plaintiffs to introduce evidence of industry standards pertaining to slopes of railroad crossings and evidence of a federal statute regarding the placement of gates and flashers at railroad crossings. The record reveals that plaintiffs' expert testified that the railroad crossing at issue was dangerous because of the daily volume of trains which pass through it, because of sight and distance restrictions and because the slope leading up to it failed to conform to an industry standard. The record further reveals that plaintiffs' counsel made comments during closing argument about how federal regulations require certain warning devices. Defendants contend that such evidence was inadmissible because the standards relied on by plaintiffs' expert were inapplicable to the crossing as it currently existed and therefore irrelevant and prejudicial.

In response to defendants' arguments, plaintiffs concede that the standards discussed at trial concerning grade crossing slopes and warning signals were not applicable to the crossing maintained by defendants. Nevertheless, plaintiffs argue that these standards were still relevant in addressing whether the railroad exercised reasonable care.

'Our review of the record reveals that while plaintiff did refer to these standards at trial, the jury was never instructed that nonconformity with either of these standards constituted negligence or negligence *per se.* In fact, the jury was not instructed at all regarding these standards. Moreover, when plaintiffs' counsel referred to federal statutory standards, defendants objected and the trial court sustained the objection. Thus, any alleged error on the part of court was harmless in light of the trial court's instructions to jury that closing statements, stricken evidence and attorney objections are not evidence in the case.

Additionally, the record indicates that the nonconforming slope was just one of the factors plaintiffs' expert relied upon in rendering his opinion concerning the safety of the crossing. Furthermore, it appears that the trial court believed that evidence of these standards was probative and relevant evidence pertaining to the failure to exercise due care at this particular crossing.

It is axiomatic that a trial court has broad discretion in the admission and exclusion of evidence and that a reviewing court should not reverse a trial court's judgment unless the court has clearly abused its discretion and the complaining party has suffered material prejudice thereby. *Columbus v. Taylor* (1988), 39 Ohio St.3d 162, 164, 529 N.E.2d 1382, 1384. In our judgment, defendants have failed to demonstrate that the trial court acted unreasonably, arbitrarily or unconscionably in admitting this evidence or that defendants themselves have suffered material prejudice. Accordingly, defendants' sixth assignment of error is overruled.

 In defendants' seventh assignment of error, they claim that they are entitled to a new trial because the jury's verdict was tainted by plaintiffs' counsel's misconduct during closing arguments. Defendants assert that plaintiffs' counsel, Frederick Levin, made several improper comments in closing argument regarding defendants' allegedly providing false information to the news media as well as implying that defendants' counsel suborned perjury during trial.

 With respect to the making of opening and closing statements, parties are afforded a certain degree of latitude. *State v. Byrd* (1987), 32 Ohio St.3d 79, 82, 512 N.E.2d 611, 616. Moreover, a trial court's rulings with respect to opening or closing statements will not be reversed in the absence of an abuse of discretion. *Kubiszak v. Rini's Supermarket* (1991), 77 Ohio App.3d 679, 688, 603 N.E.2d 308, 314.

In the case *sub judice,* the record indicates that counsel did make comments and assertions in his closing statement which may have been improper. For example, plaintiffs' counsel made comments in his opening statement asking the railroad to stop blaming others for its conduct. Plaintiffs' counsel also made comments in his closing statement about information the railroad had allegedly

announced on the radio as well as comments concerning federal regulations which were not at issue in the case. The record indicates that defense counsel objected to virtually every comment defendants contend was improper and that the trial court sustained those objections. Moreover, the trial court instructed the jury that closing statements of counsel were designed merely to assist the jury with a summary of the evidence and did not constitute evidence in the case.

In our view, based on the instances of misconduct alleged by defendant, we believe that the record in this case is "devoid of instances of conduct so highly improper or inflammatory as to amount to clear evidence that the verdict was the product of the jury's passion or prejudice." *Lance v. Leohr* (1983), 9 Ohio App.3d 297, 298, 9 OBR 544, 544, 459 N.E.2d 1315, 1316. Moreover, it is our conclusion that in light of the sustained objections and trial court's jury instructions regarding opening and closing statements, a new trial is not warranted. Defendants' seventh assignment of error is overruled.

In defendants' eighth assignment of error, they argue that the jury's verdict in excess of $2.5 million to the estate of Tonya Sheets was excessive. The record reveals that the jury awarded $2,503,016.57 in compensatory damages to the estate of Tonya Sheets. The damage award consisted of $2,500,000 in general damages, $20 in property damage and $2,996.57 in funeral expenses.

Defendants contend that the jury's verdict of approximately $2.5 million was excessive in light of the fact that the decedent was only a ten-year-old child whose beneficiaries suffered no loss of earnings or pecuniary loss. Thus, defendants assert, the jury's award was the product of passion and prejudice and was completely lacking in evidentiary support.

In determining whether passion or prejudice affected a jury's damage award to the point of necessitating a new trial, a reviewing court must consider the amount of the award and whether the damages were induced by (1) incompetent evidence, (2) misconduct by the court or counsel at trial, or (3) any other action at trial which may reasonably be said to have swayed the jury. *Shelton v. Greater Cleveland Regional Transit Auth.* (1989), 65 Ohio App.3d 665, 682, 584 N.E.2d 1323, 1334; *Loudy v. Faries* (1985), 22 Ohio App.3d 17, 19, 22 OBR 52, 54, 488 N.E.2d 235, 237. In addition, even if the verdict in question was not influenced by passion or prejudice, a trial or reviewing court may reduce the verdict by remittitur if it is excessive and unwarranted by the evidence presented. *Cox v. Oliver Machinery Co.* (1987), 41 Ohio App.3d 28, 534 N.E.2d 855.

Upon review of the record, we are unable to conclude that the jury verdict was the product of passion or prejudice or manifestly excessive in light of the evidence presented. R.C. 2125.02 provides that in a wrongful death action, compensatory damages may be awarded for losses such as loss of support from

the decedent's earning capacity, loss of services, loss of society, loss of consortium, loss of companionship as well as for mental anguish incurred by surviving parents. While some of the damages incurred by the estate of Tonya Sheets such as funeral expenses and property damage are easily quantifiable, damages for the loss of a ten-year-old girl are not. See *Betz v. Timken Mercy Med. Ctr.* (1994), 96 Ohio App.3d 211, 644 N.E.2d 1058. Therefore, we will not disturb the jury's damage award, a decision which "is so thoroughly within the province of the jury * * *." *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 655, 635 N.E.2d 331, 345. Accordingly, defendants' eighth assignment of error is overruled.

 In defendants' ninth and final assignment of error, they argue that the trial court erred in instructing the jury that the law requires a railroad to blow the train's whistle continuously upon approaching a railroad crossing.

The record indicates that with respect to the warning signals given by the train itself, the trial court instructed the jury as follows:

"The law requires that when an engine in motion approaches a street crossing where the view of such crossing is obstructed by embankment, trees, curve, or other obstruction to view upon the same line with the crossing, the engineer or person in charge of such engine shall sound such whistle at a distance of at least 1320 feet and not further than 1650 from such crossing and ring such bell continuously and sound such whistle until the engine passes through the crossing."

Defendants contend that this instruction erroneously led the jury to believe that the law imposes a statutory duty upon a train to blow its whistle continuously upon its approach toward a crossing. In addressing the duty of a train to sound its horn and whistle, R.C. 4955.32 provides:

"Every company shall attach to each locomotive engine passing upon its railroad a bell of the ordinary size in use on such engines and a steam or compressed air whistle. When an engine in motion and approaching a turnpike, highway, or street crossing or private crossing where the view of such crossing is obstructed by embankment, trees, curve, or other obstruction to view, upon the same line with the crossing, and in like manner where the railroad crosses any other traveled place, by bridge or otherwise, the engineer or person in charge of such engine shall sound such whistle at a distance of at least eighty and not further than one hundred rods from such crossing and ring such bell continuously until the engine passes the crossing. * * * "

Furthermore, R.C. 4999.04 provides:

"(A) No person in charge of a locomotive shall do the following:

" * * *

"(2) When approaching a grade crossing, fail to sound the locomotive whistle at frequent intervals, beginning no less than thirteen hundred twenty feet from such crossing and continuing until the locomotive has passed the crossing."

The record indicates that during its deliberations, the jury submitted a written question to the trial court inquiring as to whether the train's whistle has to sound continuously or intermittently. The trial court responded by referring the jury to the applicable statutes. Our review of the jury instructions reveals that despite apparent jury confusion, this particular instruction constituted a plain, distinct and unambiguous statement of the law which adequately informed the jury of the governing law. *Marshall v. Gibson* (1985), 19 Ohio St.3d 10, 19 OBR 8, 482 N.E.2d 583; *Linden v. Bates Truck Lines, Inc.* (1982), 4 Ohio App.3d 178, 4 OBR 280, 446 N.E.2d 1139. Thus, we fail to see how the instruction misled the jury in any way. Accordingly, defendants' ninth and final assignment of error is overruled.

In summary, as defendants' nine assignments of error are overruled, the judgment of the Seneca County Court of Common Pleas is hereby affirmed.

*Judgments affirmed.*

THOMAS F. BRYANT, P.J., and EVANS, J., concur.