**The STATE of Ohio, Appellee,**

v.

**ZIKO, Appellant.**

[Cite as *State v. Ziko* (1991), 71 Ohio App.3d 832.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 58275.

Decided April 8, 1991.

*Stephanie Tubbs Jones*, Prosecuting Attorney, and *Robert F. Coury*, Assistant Prosecuting Attorney, for appellee.

*Walsh & Doughten* and *David L. Doughten*, for appellant.

ANN DYKE, Judge.

Appellant, Frank Ziko, was convicted of involuntary manslaughter, R.C. 2903.04(A) (pursuant to a felony), felonious assault, R.C. 2903.11, and aggravated burglary, R.C. 2911.11, and was sentenced to concurrent terms of nine to twenty-five years, eight to fifteen years and nine to twenty-five years, respectively. On appeal appellant assigns four errors for review.

I

"The evidence is insufficient to sustain a conviction of first degree involuntary manslaughter."

■ The jury was instructed on involuntary manslaughter pursuant to a felony, R.C. 2903.04(A), and involuntary manslaughter pursuant to a misdemeanor, R.C. 2903.04(B), and was told that the possible felonies included felonious assault and aggravated burglary and that the misdemeanor to be considered was assault.

Appellant contended that proximate cause was not established and, if there was proximate cause, that the underlying offense that proximately caused the death was assault, a misdemeanor. "Involuntary manslaughter" is defined as follows in R.C. 2903.04:

"(A) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a felony.

"(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a misdemeanor."

Appellant argued that emotional stress from an argument the deceased participated in shortly before his death could have brought on the heart attack that killed the deceased and that his death shortly after appellant's assault was a coincidence. Alternatively, appellant suggests that since he was merely one of several men who assaulted the deceased he did not proximately cause the fatal heart attack.

The night that the deceased died appellant telephoned the deceased's son, John Stergo, who was married to appellant's sister, Patricia. John Stergo testified that after appellant threatened to come to his home and kill him, he reported the threat to the police, which angered his wife. John Stergo's parents arrived and witnessed a screaming argument between Patricia and John in which John slapped Patricia and threatened to kill her if she left to speak to her family when they came. According to John, the front door burst open and he and his father were attacked by appellant and appellant's brother, sisters-in-law and father. Appellant struck him in the head with a gun and appellant and the other men "hit" the deceased in the head and chest. The deceased "toppled over after he was hit for the last time by [appellant] [and] went down."

The coroner testified as follows: The deceased had several bruises on his back and elbow that were consistent with blows or a fall. The deceased had previously suffered a heart attack, had an enlarged heart and his arteries were ninety-five percent blocked. The physical assault upon the deceased created physical and emotional stress which caused a fatal heart attack. The coroner conceded that a person in the deceased's physical condition could have died from emotional stress alone.

There was no evidence that witnessing the aggravated burglary or the attack on John Stergo caused the heart attack. The coroner specifically stated that the physical assault caused the stress. Appellant participated in the assault and knew of the deceased's heart problems. Therefore, the participation of appellant's family was irrelevant and proximate cause was established.

John Stergo testified as follows:

"At that time when [appellant and Christopher Ziko] entered, [appellant] had a pistol in his hand. He hit me at the temple of the head. * * * I saw them hit [the deceased] at the temple of the head, and into the chest. He went down. [Appellant] hit him. Then Tennis, or Christopher started hitting on him. * * * [T]hey were punching [the deceased]. * * * [Appellant and Christopher Ziko] kicked. * * * [The deceased] just toppled over after he was hit for the last time by [appellant], went down."

First, John Stergo said that appellant hit the deceased but although there was testimony that appellant had a gun in his right hand there was no testimony that appellant struck the deceased with the gun. In addition, the jury specifically found that appellant had not made an actual threat with a deadly weapon. There was no evidence of dangerous ordnance. Thus, he did not knowingly cause or attempt to cause physical harm by means of a deadly weapon or dangerous ordnance. However, the coroner testified that appellant's blows, though minor, caused a heart attack. Thus, he knowingly caused serious physical harm.

Assignment of Error No. I is overruled.

## II

"The evidence is insufficient to sustain a conviction of aggravated burglary."

█ Appellant was convicted of forcibly trespassing in John and Patricia Stergo's duplex with a purpose to commit a felonious assault. Appellant contends that he was invited in by Patricia Stergo. Even if he had been invited, Stergo testified that appellant and his family subsequently forced their way in the front door and attacked John and his father.

John Stergo testified that appellant telephoned and threatened to kill him. When appellant and his family rushed in appellant's father was yelling, "kill them." The fact that the physical harm done to John Stergo was not serious (see discussion of Assignment of Error No. III) does not alter the fact that a reasonable jury could conclude that appellant trespassed in Stergo's home with a purpose to commit a felonious assault against John Stergo even though he ultimately committed an assault. Assignment of Error No. II is overruled.

## III

"The evidence is insufficient to sustain a conviction of felonious assault upon John Stergo."

█ The indictment charged appellant with causing serious physical harm to John Stergo or causing physical harm to John Stergo with a deadly weapon or dangerous ordnance. There was no evidence that appellant's attack on John Stergo caused serious physical harm. John Stergo did testify that appellant hit him in the head with a gun. However, the jury was sent a violence specification in which it found that appellant did not make an actual threat of physical harm with a deadly weapon. If appellant had caused physical harm with a deadly weapon he would have made an actual threat of physical harm with a deadly weapon. The jury was free to accept or reject

any part of Stergo's testimony and it rejected the claim that appellant caused physical harm with a gun. Thus, the state established assault, rather than felonious assault, against John Stergo. **Assignment of Error No. III** is sustained. The conviction for felonious assault is vacated and a conviction for assault is entered.

## IV

"The trial court erred by instructing the jury that involuntary manslaughter is a strict liability offense stemming from an unlawful act."

R.C. 2901.21(B) states:

"When a section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in such section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, reckless-ness is sufficient culpability to commit the offense."

*State v. Parrish* (1984), 12 Ohio St.3d 123, 124, 12 OBR 164, 166, 465 N.E.2d 873, 874, stated as follows:

"Examples of such a 'plain indication' include R.C. 2915.02(A)(1), bookmak-ing, and R.C. 2915.03(A)(1), gambling house operation. See *State v. Wac* (1981), 68 Ohio St.2d 84 [22 O.O.3d 299, 428 N.E.2d 428] * * *. In each of these latter statutes the General Assembly has expressly differentiated de-grees of culpability."

*Parrish* held that prostitution, R.C. 2907.25, is not a strict liability offense. *Id.* R.C. 2907.25, prostitution, states: "No person shall engage in sexual activity for hire." If involuntary manslaughter had stated simply, "[n]o person shall cause the death of another," the offender would be guilty only if recklessness were shown. However, R.C. 2903.04, "involuntary man-slaughter," is defined as follows:

"(A) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a felony.

"(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a misdemeanor."

Proximate cause requires evidence that the offender had reasonably fore-seen the death. Contrary to appellant's contention, the trial judge did not instruct the jury that the appellant need only have committed an unlawful act to be liable. The jury was told that there need be no intent, which is true, but proximate cause must be established.

In addressing the issue of whether a trial court erred in failing to instruct on a culpable mental state for involuntary manslaughter, we have stated that the trial judge is not required to instruct on a culpable mental state other than that provided for the underlying felony or misdemeanor. *State v. Roundtree* (June 16, 1983), Cuyahoga App. No. 45683, unreported, 1983 WL 5484. In *State v. Winston* (Feb. 19, 1987), Cuyahoga App. No. 51477, unreported, 1987 WL 6805, we stated that recklessness is not the mental state for involuntary manslaughter and cited *State v. Johnson* (1983), 6 Ohio St.3d 420, 424, 6 OBR 466, 469, 453 N.E.2d 595, 599, *reversed on other grounds* (1984), 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425, which stated:

"Clearly, the common element shared by * * * [murder and involuntary manslaughter] is the causing of the death of another with the only distinguishing factor being the mental state involved in that act. Murder is the more serious offense in that it involves the purposeful killing of another. Involuntary manslaughter involves a lesser mental state as it is a killing which proximately results from defendant's committing or attempting to commit another offense." *Johnson*, 6 Ohio St.3d at 424, 6 OBR at 469, 453 N.E.2d at 599, cited by *Winston* at 9. *Winston* concluded as follows:

"*Johnson* reveals the culpable mental state for involuntary manslaughter 'is a killing which proximately results from the defendant's committing or attempting to commit another offense.' Consequently, since the involuntary manslaughter statute, R.C. 2903.04, provides for the necessary mental state, it is not necessary to resort to R.C. 2901.21(B)." *Id.* at 10.

*Johnson* said that involuntary manslaughter "involves a lesser mental state" than purposeful, but it did not say that no mental state must be proven, as in a strict-liability offense. *Johnson* identified a fifth "mental state," in addition to purposely, knowingly, recklessly and negligently: the mental state of one who proximately causes the death of another, *i.e.*, one who commits an act which, while taken without an intention to kill, was performed in circumstances in which a reasonable person would foresee that it would cause the death of the victim. This situation differs from recklessness in which the particular offender disregards a known risk, *i.e.*, a risk known to that offender. R.C. 2901.22(C).

Thus, involuntary manslaughter is not a strict liability offense. Assignment of Error No. IV is overruled.

## V

"The trial court abused its discretion by imposing a sentence without considering mitigation factors mandated by R.C. 2929.12."

■ A silent record raises the presumption that a trial court considered the factors contained in R.C. 2929.12. *State v. Adams* (1988), 37 Ohio St.3d 295, 525 N.E.2d 1361.

Appellant contends that the record reveals that the trial court failed to consider the factors in R.C. 2929.12. Appellant requested a probation report and the trial judge stated that there would be no report because the offenses were non-probationable and he was not going to spend nine hundred dollars on a report after he had listened to the case for two weeks. The trial judge sentenced appellant after flatly stating that he had considered the provisions required.

First, the offenses were probationable. Second, there was nothing during the trial that would tell the judge about appellant's lack of a criminal record or background or the likelihood that he would respond to corrective or rehabilitative treatment. The record rebuts the presumption that the trial court considered the factors in R.C. 2929.12.

Assignment of Error No. V is sustained.

This case is remanded to the trial court for resentencing.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

JOHN F. CORRIGAN and JOHN V. CORRIGAN, JJ., concur.