OPINION
Appellant, Robert A. Baksi, appeals from his conviction in the Trumbull County Court of Common Pleas on one count of involuntary manslaughter in violation of R.C. 2903.04(A), one count of corrupting another with drugs in violation of R.C.2925.02(A)(3)(C)(1), and one count of trafficking in heroin in violation of 2925.03(A) and (C)(6)(a). For the reasons that follow, we affirm appellant's conviction.
The following facts are derived from the evidence presented at appellant's jury trial. During the course of the events which are the subject of this appeal appellant was incarcerated at the Trumbull Correctional Institution ("TCI"). On the night of August 26, 1997, appellant was serving as a trustee-porter at TCI. Before leaving his cell to begin work, appellant prepared a syringe of heroin and had his cellmate, David Adkins ("Adkins"), inject him with the syringe. The dosage caused appellant's knees to buckle, and he nearly lost consciousness.
After recovering, appellant proceeded to prepare another syringe of heroin for the victim, Daniel Williams, which contained a stronger dose than that taken by appellant. While working in the cellblock, appellant slid the syringe under the victim's cell door. After injecting himself, the victim wrapped the syringe back up in toilet paper and slid it back under the door to appellant. Moments later, the victim's cellmate, James Bennett ("Bennett"), heard the victim hit his bed with a "thud." Bennett asked the victim if he was all right, to which the victim replied affirmatively.
A short time later, the victim again passed out, landing face-first on the cell floor. Bennett picked the victim up off the floor and placed him in his bed. Concerned, Bennett alerted appellant to the situation. Appellant told Bennett not to worry and proceeded to slide ice under the victim's cell door for Bennett to place around the victim's groin area in an attempt to revive him.
After completing his duties, appellant returned to his cell. He appeared nervous and told his cellmate "* * *, I'm in trouble now." Appellant then proceeded to flush the syringe used by the victim down the toilet.
At approximately 2:00 a.m. on August 27, 1997, Bennett became concerned when he realized that the victim had stopped snoring. When Bennett realized that the victim was not breathing, he alerted the guard on duty and told him, "my cellie stopped breathing." A corrections officer subsequently checked the victim for a pulse but was unable to find one. Efforts to revive the victim were unsuccessful.
An autopsy was performed on the victim, and the cause of death was determined to be cardiorespiratory arrest due to drug intoxication. Tests performed on the victim's blood and urine revealed that a high concentration, four times the lethal dose, of morphine was in the victim's system. The death was ruled a homicide.
On November 21, 1997, appellant was indicted on one count of murder in violation of R.C. 2903.02. The court subsequently nolled the murder indictment and appellant was re-indicted on the charges of which he was eventually convicted, involuntary manslaughter, corrupting another with drugs, and trafficking. A superseding indictment was issued on the first day of trial, May 11, 1998, naming the drug at issue in the corrupting another with drugs and the trafficking charges as heroin. At the conclusion of his jury trial, appellant was found guilty on all three charges. The trial court subsequently sentenced appellant to ten years for involuntary manslaughter and eight years for the corrupting another with drugs, with the sentences to run consecutively. The trafficking in heroin count was merged with the corrupting charge for purposes of sentencing. Appellant perfected a timely appeal and asserts the following assignments of error for our consideration:
 "[1.] The court erred in not granting Defendant's motion to dismiss as Defendant was subjected to multiple punishment for the same offense.
"[2.] Defendant was denied a speedy trial.
 "[3.] Defendant was subjected to a vindictive prosecution.
 "[4.] Defendant was denied due process of law and the right to present a defense when the court allowed improper rebuttal evidence and would not allow surrebuttal by Defendant.
 "[5.] Defendant was denied a fair trial and due process of law when the court allowed Dr. William Cox to testify as to the manner of death.
 "[6.] Defendant was denied a fair trial by reason of cumulative errors.
 "[7.] Defendant was denied due process of law when the court instructed in such a manner that defendant was held strictly liable for a criminal act on less culpability than was needed to recover for negligence in a civil action.
 "[8.] Defendant was denied due process of law when the court refused to instruct on intervening cause.
 "[9.] Defendant was denied due process of law when the court constructively amended the statute concerning the element of causation.
 "[10.] Defendant was denied due process of law when the court did not instruct on [the] culpable mental state needed for the commission of involuntary manslaughter.
 "[11.] Defendant was denied due process of law when his motion for judgment of acquittal was overruled.
 "[12.] Defendant was denied due process of law when the court refused to dismiss the indictment where there was a material variance between the allegation of the indictment and proof.
 "[13.] Defendant was subjected to multiple punishments in violation of his Fifth Amendment rights when he was separately and consecutively sentenced for involuntary manslaughter and of corrupting another with drugs.
 "[14.] Defendant was objected [sic] to a cruel and unusual punishment when the court illegally sentenced Defendant to a [sic] maximum consecutive terms of imprisonment."
In his first assignment of error, appellant argues that the state was barred from criminally prosecuting him because he had already been punished by prison authorities for the same offense. Similarly, in his thirteenth assignment of error, appellant argues that he was subjected to multiple punishments for the same conduct when he was convicted of both involuntary manslaughter and corrupting another with drugs. These two assignments of error are interrelated and will, therefore, be addressed together.
A trial court's determination of whether or not the Double Jeopardy Clause prohibits a subsequent prosecution in a given case is a matter of law. State v. Musick (1997), 119 Ohio App.3d 361,367. However, an appellate court will defer to a trial court's factual findings and independently determine, as a matter of law, whether the trial court erred in applying the substantive law to the facts of the case. Id.
Ohio courts have historically viewed the protections of the Double Jeopardy Clauses of the Ohio and United States Constitutions as coextensive. State v. Gustafson (1996), 76 Ohio St.3d 425,432.[1] As a result, the Double Jeopardy Clause of each constitution prohibits: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. Id., citing United States v. Halper (1989),490 U.S. 435, 440.
In his first assignment of error, appellant argues that because he was placed in administrative segregation immediately after the victim's death, he was effectively punished for the conduct at issue in his subsequent criminal trial. According to appellant, because he had already been punished by being placed in administrative segregation, his subsequent conviction violated the prohibition against multiple punishments for the same offense. We disagree.
The United States Supreme Court has instructed that in the absence of substantial evidence in the record to indicate that prison officials have acted arbitrarily, courts should ordinarily defer to the expert judgment of prison officials in such matters.Bell v. Wolfish (1979), 441 U.S. 520, 548. Moreover, the Supreme Court of Ohio has held that "[a]bsent evidence that the challenged institutional action would affect the inmate's duration of confinement, an inmate has no liberty interest in being free of disciplinary or administrative segregation because such segregation does not impose an atypical and significant hardship on the inmate." State ex rel. Larkins v. Wilkinson (1997),79 Ohio St.3d 477, 479.
With the foregoing principles in mind, we must decide whether placing an inmate in administrative segregation bars a subsequent criminal prosecution for the same offense. Nothing in the record before us indicates that appellant was placed in administrative segregation as punishment. While appellant did lose certain privileges, this alone is insufficient to find that he was punished so as to bar a subsequent criminal prosecution on double jeopardy grounds. See, generally, State v. Procter (1977),51 Ohio App.2d 151, 153 ("federal courts have consistently held that administrative discipline is not a bar to a prosecution for a criminal offense by reason of double jeopardy"); State v. Keller
(1976), 52 Ohio App.2d 217, 219 ("administrative sanctions imposed by prison officials upon a prisoner for violations of prison rules of conduct do not raise the bar of double jeopardy barring prosecution of that prisoner for a statutory offense arising from the course of conduct for which the disciplinary measures were taken"); State v. Vasquez (1997), 122 Ohio App.3d 692, 695
("disciplinary action taken by prison officials constitutes `punishment' for double jeopardy purposes only in the exceedingly rare case where the disciplinary penalty imposed is grossly disproportionate to the remedial goal of maintaining order and discipline in the prison"). Appellant's first assignment of error is without merit.
In his thirteenth assignment of error, appellant argues that he was subjected to multiple punishments for the same conduct because he was separately sentenced for involuntary manslaughter and corrupting another with drugs.[2] According to appellant, he could not commit involuntary manslaughter without committing the crime of corrupting another with drugs. As a result, appellant argues that the trial court's sentencing on both counts violated both the Double Jeopardy Clause and R.C. 2941.25(A). We disagree.
R.C. 2941.25 states:
 "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
The applicable test for determining whether or not two crimes are allied offenses of similar import is found inState v. Blankenship (1988), 38 Ohio St.3d 116. If the elements of the crimes "correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import."Id. at 117. However, if the elements do not correspond, the offenses are of dissimilar import and multiple convictions are permitted.
In the past, the Supreme Court of Ohio has applied R.C.2941.25(A) in two distinct ways. Under one approach, the court would compare the elements of the offenses in question by reference to the particular facts alleged in the indictment.Newark v. Vazirani (1990), 48 Ohio St.3d 81. In other cases, the court compared the statutory elements of the crimes in the abstract without reference to the facts of a particular case.State v. Richey (1992), 64 Ohio St.3d 353.
Noting the inconsistency that this bifurcated approach created among the appellate courts, the Supreme Court of Ohio recently clarified the issue of whether a court should look at the facts of a particular case or look to the statutory elements alone. InState v. Rance (1999), 85 Ohio St.3d 632, paragraph one of the syllabus, the court held that "[u]nder an R.C. 2941.25(A) analysis, the statutorily defined elements of offenses that are claimed to be of similar import are compared in the abstract." (Emphasis sic.) Courts now must "assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes `correspond to such a degree that the commission of one crime will result in the commission of the other.'" Id. at 638, quoting State v. Jones (1997), 78 Ohio St.3d 12, 14. If the elements do correspond, the defendant may not be convicted of both offenses unless the court determines that the defendant committed the crimes separately or with separate animus. Rance at 638-639. This decision explicitly overrules prior cases containing contrary language, including Newark, which appellant relies on.
When comparing the elements of involuntary manslaughter and corrupting another with drugs, we find that they are not allied offenses of similar import. The particular charge in question was that appellant caused the death of another by either supplying the victim with heroin, or in the alternative, by trafficking in heroin. Involuntary manslaughter requires causing the death of another as a proximate result of committing or attempting to commit a felony. R.C. 2903.04(A). Corrupting another with drugs, however, does not require that the victim die for the crime to be committed.
Moreover, corrupting another with drugs requires that appellant acted knowingly in furnishing the heroin to the victim, while involuntary manslaughter does not require that appellant act knowingly, only that he proximately cause the victim's death. Because each offense requires proof of an element that the other does not, they are not allied offenses of similar import. SeeRichey, at 369 (holding that aggravated murder and aggravated arson are not allied offenses of similar import within the meaning of R.C. 2941.25).
After reviewing the elements in the abstract per Rance, we conclude that involuntary manslaughter and corrupting another with drugs are not allied offenses of similar import because the commission of one will not automatically result in the commission of the other. As a result, appellant may be punished for both offenses and, his sentence for each offense does not violate R.C.2941.25(A) or the Double Jeopardy Clause. Appellant's thirteenth assignment of error is without merit.
In his second assignment of error, appellant argues that the case should have been dismissed because his right to a speedy trial had been violated. According to appellant, he was effectively "arrested" when he was placed in administrative segregation on April 28, 1997, notwithstanding the fact that he was not indicted until November 21, 1997. Appellant further argues that because he was effectively "arrested" when he was placed in administrative segregation, the commencement of speedy trial time should be calculated from that date. We disagree.
Both the United States and Ohio Constitutions recognize the right of an accused to a speedy trial. State v. Lewis (June 26, 1998), Portage App. No. 97-P-0092, unreported, at 2, 1998 WL 553483. As this court has previously noted, "[t]he provisions of R.C. Chapter 2945 `represent a rational effort to enforce the constitutional guarantee of a speedy trial[.]'" Id. at 2, quotingState v. Pachay (1980), 64 Ohio St.2d 218, 222, and that the speedy trial statute is to be strictly construed against the state. State v. Miller (1996), 113 Ohio App.3d 606, 608.
R.C. 2945.71 reads in pertinent part:
"(C) A person against whom a charge of felony is pending:
"* * *
 "(2) Shall be brought to trial within two hundred seventy days after his arrest.
"* * *
 "(E) For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days. * * *"
The United States Supreme Court has held that:
 "On its face, the protection of the [Sixth] Amendment is activated only when a criminal prosecution has begun and extends only to those persons who have been `accused' in the course of that prosecution. These provisions would seem to afford no protection to those not yet accused, nor would they seem to require the Government to discover, investigate, and accuse any person within any particular period of time." United States v. Marion
(1971) 404 U.S. 307, 313.
Moreover, "it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." Id.
at 320. The Supreme Court explicitly declined to extend speedy trial protections to the period prior to arrest, concluding that "a citizen suffers no restraints on his liberty and is not the subject of public accusation [prior to arrest]: his situation does not compare with that of a defendant who has been arrested and held to answer."Id. at 321.
Appellant's argument that he was "arrested" on April 28, 1997, the day he was placed in administrative segregation, is without merit. Administrative detention is not an arrest for speedy trial purposes. State v. Grinnell (1996), 112 Ohio App.3d 124, 131-132
("[a]ctual physical restraint may have increased and free association diminished, but unless we were to say that imprisonment ipso facto is a continuing arrest, these criteria bear little weight in the peculiar context of a penal institution where the curtailment of liberty is the general rule not the exception"); State v. Heyward (May 18, 1998), Pickaway App. No. 96CA42, unreported, 1998 WL 290238.
In the case at bar, appellant was indicted on November 21, 1997. He was subsequently brought to trial on May 11, 1998, 163 days from the day he was indicted.
As a result, appellant was tried well within the restraints set out in R.C. 2945.71.[3] Assignment of error two is without merit.
In his third assignment of error, appellant argues that he was subjected to a vindictive prosecution for failing to enter a guilty plea to the original charge of murder.
Appellant's only argument in support of this proposition is that he was re-indicted on lesser charges after exercising his right to plead not guilty. We disagree.
A prosecutor has broad authority in determining whether to prosecute. State ex rel. Murr v. Meyer (1987), 34 Ohio St.3d 46. However, when the decision to prosecute is based on vindictiveness, "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort[.]" Bordenkircher v. Hayes (1978), 434 U.S. 357,363. Consequently, a vindictive purpose will be presumed "in certain cases in which action detrimental to the defendant has been taken after the exercise of a legal right * * *." UnitedStates v. Goodwin (1982), 457 U.S. 368, 373. However, in a pretrial setting, a prosecutor is free to seek indictment on whatever charges the evidence can support, and no presumption of vindictiveness will attach if the defendant was clearly subject to those charges from the outset. Id. at 383-384.
We noted in State v. Johnson (1991), 77 Ohio App.3d 212, 220, that a reviewing court must distinguish between a presumption of vindictiveness and actual vindictiveness. A presumption of vindictiveness "arises only when the procedural history of the case reasonably indicates the likelihood of vindictiveness."
In the case at bar, nothing in the record reasonably indicates that the prosecutor was vindictive in seeking a reindictment of appellant.[4] The fact that appellant was re-indicted, standing by itself, does not warrant the imposition of a presumption against the prosecution. Nor does the fact that a superseding indictment was handed down by the grand jury on the day appellant's trial was set to begin. The purpose of the superseding indictment was to clarify what drug appellant was alleged to have used in committing the various offenses, not to harass or prejudice appellant.
Appellant has also failed to demonstrate actual vindictiveness on the part of the prosecution in the case at bar. As a result, the trial court properly denied appellant's motion to dismiss the indictment. Appellant's third assignment of error is without merit.
In his fourth assignment of error, appellant argues that he was denied due process of law and the right to present a defense because the trial court refused to allow appellant to present surrebutttal evidence. According to appellant, he was entitled to present surrebuttal evidence because the state was permitted to introduce new evidence on rebuttal to prove the elements of the offenses. Appellant further argues that his testimony was important to controvert the credibility of a prosecution witness. We disagree.
The denial of surrebuttal testimony by a criminal defendant lies solely within the discretion of the trial court. State v.Spirko (1991), 59 Ohio St.3d 1, 28. See, also, R.C. 2945.10(D). Moreover, a trial court does not, ipso facto, abuse its discretion in denying a criminal defendant the opportunity to present surrebuttal testimony. Spirko at 28. The term "abuse of discretion" connotes more than error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Apanovitch (1987), 33 Ohio St.3d 19, 22.
First, contrary to appellant's assertions, the testimony of Harold Michaels ("Michaels") was not new evidence. Michaels' testimony was necessary to rebutt the testimony of David Stonestreet ("Stonestreet"), who testified that Michaels could have supplied the lethal dose of heroin to the victim.
The second reason why Michaels' testimony was not new evidence is that, at most, it was merely cumulative to evidence already presented during the state's case-in-chief. Both Bennett and Adkins had previously testified that appellant was the person who supplied the drugs to the victim. Michaels' testimony concerning the alleged debt between appellant and the victim had also been testified to by other witnesses.
Moreover, even if the trial court erred in refusing to allow appellant to present surrebuttal testimony, at worst, it was harmless error in light of the other abundant evidence adduced at trial pointing to appellant's guilt. State v. Davis (Dec. 31, 1998), Lake App. No. 97-L-246, unreported, at 6, 1998 WL 964598. Appellant's fourth assignment of error is without merit.
In his fifth assignment of error, appellant argues that he was denied a fair trial because the trial court allowed Dr. William Cox ("Dr. Cox") to testify as to the manner of death. Appellant argues that Dr. Cox did not have personal knowledge of the facts he testified to and that he was only reporting information he received from others. We disagree.
"The qualification of an expert is a matter for determination by the court on the facts, and rulings with respect to such matters will ordinarily not be reversed unless there is a clear showing that the court abused its discretion." State v. Maupin
(1975), 42 Ohio St.2d 473, 479. Evid.R. 702, which governs testimony by experts, provides in pertinent part:
 "A witness may testify as an expert if all of the following apply:
 "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *"
A coroner is an expert witness who is permitted to give an opinion on matters within his scope of expertise. State v.Heinish (1990), 50 Ohio St.3d 231, 234. Moreover, as this court noted in State v. Beaver (1997),119 Ohio App.3d 385, 392:
 "Under R.C. 313.19, the coroner's verdict constitutes the `legally accepted cause of death.' It establishes the physiological cause of death and the immediate mechanical, chemical, or biological means by which the death was caused; it does not, however, assign criminal responsibility for the death. State v. Cousin (1982), 5 Ohio App.3d 32 * * *." (Parallel citations omitted.)
The record reveals that Dr. Cox possessed extensive experience in the field of forensic pathology. In addition to his medical training, Dr. Cox had performed somewhere around 13,500 autopsies at the time of the victim's death. While Dr. Cox was not the Trumbull County coroner at the time the victim died, his findings as to the manner of death were forwarded to then Trumbull County coroner Dr. Ted Soboslay, whose final verdict as to the victim's cause of death adopted Dr. Cox's conclusion that the victim's death was a homicide resulting from a heroin overdose.
Moreover, appellant's assertion that Dr. Cox did not perform the autopsy on the victim is completely groundless. In fact, the record is quite clear that Dr. Cox did perform the victim's autopsy on April 28, 1997, one day after his death. Evid.R. 703 provides that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." Because Dr. Cox performed the autopsy on the victim, he was in a unique position to determine the cause of death. The information supplied by Trooper Richard Baron ("Trooper Baron"), of which appellant complains, only confirmed Dr. Cox's findings. See Statev. Solomon (1991), 59 Ohio St.3d 124, syllabus ("Where the expert bases his opinion, in whole or in major part, on facts or data perceived by him, the requirement of Evid.R. 703 has been satisfied.").
Consequently, we conclude that the trial court did not abuse its discretion in allowing Dr. Cox to testify as to the victim's manner of death. Appellant's fifth assignment of error is without merit.
In his sixth assignment of error, appellant argues that he was denied a fair trial because of the cumulative errors that occurred in his trial. We disagree.
 "[T]here can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial." United States v. Hasting (1983), 461 U.S. 499, 508-509. However, the Constitution does guarantee that a criminal defendant receive a fair trial. Delaware v. Van Arsdall (1986), 475 U.S. 673, 681. As a result, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." State v. Garner (1995), 74 Ohio St.3d 49, 64.
Appellant raises nine different errors in this assignment, each of which are distinct from his thirteen other assignments of error. We will discuss each of them in turn below.
First, appellant argues that reference was made to the fact that appellant did not provide a statement to investigators after being placed in administrative segregation and that he did not testify in his defense at trial. With respect to appellant's first claim, an investigator did testify that appellant refused to make a statement. However, the trial court sustained appellant's objection and instructed the jury to disregard the comment. Because a jury is presumed to follow the instructions of the trial court, State v. Loza (1994), 71 Ohio St.3d 61, 75, we conclude that the witness' remark did not prejudice appellant.
Appellant next takes issue with two comments made by the prosecutor in her closing argument. First, appellant argues that his silence was used against him when the prosecutor made the following comment: "[the witnesses] were all people in the best position to see what went on that night besides Danny Williams who can no longer tell us, and the defendant." Appellant's attorney promptly objected to the remark and the trial court sustained that objection. The prosecutor's comment, standing alone and in light of the trial court sustaining appellant's objection, did not prejudice appellant.
The second remark that appellant contends prejudiced his trial was the comment that "* * * the State's evidence is uncontradicted * * *." As the Supreme Court of Ohio has already stated, "[a] reference by the prosecutor in closing argument to uncontradicted evidence is not a comment on the accused's failure to testify, where the comment is directed to the strength of the state's evidence and not to the silence of the accused, and where the jury is instructed, as here, to not consider the accused's failure to testify." State v. Williams (1986), 23 Ohio St.3d 16, 19-20, citing State v. Ferguson (1983), 5 Ohio St.3d 160. Nothing in the record suggests that the prosecutor was referring to appellant's silence, but instead, it can be inferred that she was commenting on the strength of the state's evidence. This comment does not rise to a prejudicial level.
Appellant's second argument under this assignment is that the prosecutor misled the jury by oversimplifying the elements of involuntary manslaughter. Because the trial court instructs the jury on the elements of the various offenses, the prosecutor's remarks concerning the elements of involuntary manslaughter were immaterial and not prejudicial.
Third, appellant argues that the prosecutor improperly argued that heroin was morphine. This argument is clearly without merit. Dr. Cox testified extensively to the fact that heroin is a derivative of morphine and that a blood or urine test will not reveal traces of heroin because of its short half-life. The evidence shows that after a person injects heroin into his body, it rapidly converts to morphine. Moreover, appellant's argument that the scientific term for heroin is diacetylmorphine is not relevant to whether appellant supplied the victim with a lethal dose of heroin.
Appellant next argues that the trial court allowed the prosecution to argue that an accidental death is criminal while at the same time preventing appellant from arguing that the victim's death was his own fault and not appellant's. Contrary to appellant's assertion, the record shows that he was permitted to argue that the victim's death was accidental and that the victim was responsible for his own death by voluntary injecting himself with the heroin. Consequently, this argument is without merit.
In his fifth argument, appellant contends that the trial court improperly allowed a witness to testify that heroin, a separately identifiable controlled substance, was consistent with morphine. Appellant further argues that the trial court erred in allowing Dr. Cox to testify about heroin's effects, even though he had never witnessed someone taking heroin. As stated above, there was competent and credible evidence in the record showing that heroin dissipates into morphine shortly after entering the body. Moreover, the fact that Dr. Cox never personally witnessed someone overdose on heroin does not diminish that fact that he was qualified to render an opinion on the effects of an overdose.
In his sixth argument, appellant claims that the trial court erred in allowing witnesses to testify about possibilities concerning various matters. Experts "may * * * testify to observable characteristics of the available evidence, including the possibilities, consistencies and inconsistencies indicated by the evidence * * *." State v. Brown (1996), 112 Ohio App.3d 583,597. The fact that an expert testifies in response to a particular question that a certain result is possible does not necessarily mean that the possibility coincides with the expert's opinion or that the possibility occurred in that situation.
Both Dr. Cox and Monica Parkhurst, the medical technician who analyzed the victim's blood and urine, were qualified by the trial court as experts in the field of forensic pathology and medical toxicology, respectively. Furthermore, the testimony by Trooper Baron concerning the canine search contained no information prejudicial to appellant.
Appellant next argues that Adkins should not have been allowed to testify that the victim died of a heroin overdose because he was not a chemist, and he did not actually see the victim inject the drug. The record shows that the trial court sustained defense objections to Adkins' testimony concerning the victim's death. However, Adkins was properly permitted to testify to the facts he personally observed, such as appellant's preparing the victim an extremely powerful dose of heroin and that appellant took the syringe with him when he left his cell to begin his trustee-porter duties.
Next, appellant argues that Trooper Baron's testimony concerning the canine search of the victim's cell was based on hearsay because Trooper Baron was not the dog's handler. Notwithstanding the fact that there is no authority to the effect that only a drug dog's handler can testify about a particular search, the testimony in question was not hearsay. Trooper Baron accompanied the dog's handler on the search and personally observed the dog's reactions. His testimony at trial concerned what he observed, not what he was told by others.
Appellant's final argument under this assignment is that the prosecutor improperly bolstered one of the state's witnesses during closing argument. Parties are entitled to wide latitude during closing arguments, State v. Brown (1988), 38 Ohio St.3d 305,317, so long as the comments are not abusive and do not affect the defendant's substantial rights. State v. Smith (1984),14 Ohio St.3d 13, 14. Moreover, the weight to be given evidence and the credibility of witnesses are issues for the trier of fact.State v. Palmer (1997), 80 Ohio St.3d 543, 567. The prosecutor's remarks in question do not amount to the improper bolstering of a witness.
Despite appellant's contentions, the above alleged errors do not sufficiently rise to the level of cumulative error so that appellant was denied a fair trial. As a result, appellant's sixth assignment of error is without merit.
In assignment of error seven, appellant argues that the causation instruction given to the jury effectively made him strictly liable for the victim's death, even though, according to appellant, an intervening act caused the death. Appellant proposes that if the death was caused by another person, he cannot be held criminally liable. Thus, appellant argues that his liability was unconstitutionally premised on the voluntary act of the victim injecting himself with the heroin.
In his ninth assignment of error, appellant argues that the trial court constructively amended the involuntary manslaughter statute by providing the jury with multiple variations of causation. Specifically, appellant argues that the trial court's instruction on natural consequences amended the prior instruction on causation, lessening the burden on the prosecution to convict appellant of involuntary manslaughter beyond a reasonable doubt. Because the assignments are interrelated, we will address them together.
Appellant failed to object to the proposed instructions concerning causation and natural consequences. As a result, appellant has waived all but plain error with respect to the instructions in question. Crim.R. 30(A) provides in pertinent part
 "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury." See, also, State v. Underwood (1983), 3 Ohio St.3d 12.
When reviewing the validity of a particular jury instruction, the challenged instruction may not be reviewed in isolation, but must be reviewed within the context of the entire charge.State v. Burchfield (1993), 66 Ohio St.3d 261. Furthermore, involuntary manslaughter is not a strict liability offense. State v. Ziko (1990), 71 Ohio App.3d 832, 837. The intent required to commit involuntary manslaughter is the intent assigned to the underlying offense. State v. Losey
(1985), 23 Ohio App.3d 93, 97.
In the case at bar, the trial court instructed as follows with respect to causation:
 "Cause: The State charges that the act or failure to act of the defendant caused serious physical harm to Danny Williams. Cause is an essential element of the offense. Cause is an act or failure to act which in a natural and continuous sequence directly produces the serious physical harm to Danny Williams and without which it would not have occurred.
 "Natural Consequences: The defendant's responsibility is not limited to the immediate or most obvious result of the defendant's act or failure to act. The defendant is also responsible for the natural and foreseeable consequences that follow in the ordinary course of events from the act or failure to act." (Emphasis added.)
These instructions, verbatim, follow the model jury instructions on causation and natural consequences in 4 Ohio Jury Instructions (1997), Section 409.55, at 64-65. In addition, this court has previously upheld the use of similar instructions in the context of vehicular homicide. See State v. Schulte
(Oct. 25, 1996), Lake App. No. 94-L-186, unreported, at 6-7, 1996 WL 660880. See, also, State v. New (Sept. 20, 1994), Franklin App. No. 92AP-904, unreported, at 8-10, 1994 Ohio App. LEXIS 4145; State v. Cotton (June 7, 1990), Cuyahoga App. No. 57057, unreported, 1990 Ohio App. LEXIS 2256; State v. Velves (Aug. 19, 1996), Stark App. No. 1995 CA 00366, unreported, at 7-8, 1996 Ohio App. LEXIS 3713. Because the jury instructions in this case correctly reflected the relevant law concerning causation, there is no plain error, and appellant's seventh and ninth assignments of error are without merit.
In his eighth assignment of error, appellant argues that the trial court erred in refusing to give an intervening cause instruction as requested by appellant. According to appellant, an intervening cause instruction was appropriate because the victim voluntarily injected the heroin. Thus, appellant believes that the voluntary act of the victim cuts off any criminal liability of appellant. We disagree.
Although appellant argues that an intervening cause instruction should have been given, in reality, he is arguing that his independent intervening cause instruction should have been given to the jury. The record shows that the trial court instructed the jury on intervening causes as follows:
 "Intervening causes: The defendant is responsible for the natural consequences of the defendant's unlawful act or failure to act even though death or physical harm to the person was also caused by an intervening act or failure to act of another person."
This instruction is a verbatim recitation of the intervening causes instruction in 4 Ohio Jury Instructions (1997), Section 409.56, at 65.
A "criminal defendant is entitled to have the trial court give complete and accurate jury instructions on all the issues raised by the evidence." State v. Sneed (1990), 63 Ohio St.3d 3, 9. A requested jury instruction should ordinarily be given if it is a correct statement of law applicable to the facts in the case and it is not covered by the general charge. Id. However, the trial court is not required to give a proposed jury instruction in the exact language requested by its proponent, even if it properly states an applicable rule of law, so long as the substance of the request is included in the instructions which are given. Id. Moreover, a trial court's failure to give a specific instruction will be overturned only if the trial court abused its discretion.State v. Wolons (1989), 44 Ohio St.3d 64.
Appellant requested the following instruction:
 "Causal Connection is broken when a subsequent act or failure to act intervenes and completely removes the effect of the first act or failure to act and is itself a proximate case of the injury or death. The causal connection of the first act or failure to act is broken and superseded by the second only if the intervening act or failure to act is both new and independent. The term independent means the absence of any connection or relationship of cause and effect between the original and subsequent act or failure to act. The term new means the second act or failure to act could not reasonably have been foreseen."[5] (Emphasis added.)
The language of the requested instruction clearly demonstrates that appellant was actually requesting an instruction on independent intervening cause, not independent cause. This distinction is important because the trial court concluded, and we agree, that appellant's theory at trial was that he did not supply the victim with the lethal overdose of heroin. Cf. State v. Freeze (Dec. 21, 1990), Clark App. No. 2421, unreported, 1990 Ohio App. LEXIS 5796.
Appellant's proposed instruction basically states that no matter where the drugs originated from, if the victim voluntarily took the drugs, appellant could not be criminally liable for the victim's death. This is an incorrect statement of the applicable law. Appellant was guilty of involuntary manslaughter if he was found guilty of either trafficking or corrupting another with drugs, and that conduct caused the victim's death. The victim's voluntary injection of the heroin can not be an independent intervening cause absolving appellant of criminal liability.
As a result, an instruction on independent intervening cause is not supported by the facts presented at trial. Therefore, the trial court did not abuse its discretion in denying appellant's requested instruction. Appellant's eighth assignment of error is without merit.
In his tenth assignment of error, appellant argues that the trial court erred in failing to instruct the jury that involuntary manslaughter must be committed knowingly. According to appellant, if the state was not required to prove the appropriate culpable mental state, in effect, he was being held strictly liable for the offense. We disagree.
As we stated earlier, involuntary manslaughter is not a strict liability offense. Ziko. Moreover, appellant cites no authority for the proposition that the traditional rule of law, that criminal intent as an element of involuntary manslaughter, is supplied by the criminal intent necessary to commit the underlying felony. Losey. See, also, State v. Campbell (1991), 74 Ohio App.3d 352,358-359; State v. Malone (Jan. 20, 1994), Cuyahoga App. No. 63604, unreported, at 1, 1994 WL 18577.
The trial court correctly instructed the jury that to find appellant guilty of involuntary manslaughter, they would have to find that "the defendant did cause the death of another, one Daniel Williams, as a proximate cause of Robert Baksi committing the offense of corrupting another with drugs or trafficking in heroin." In addition, the trial court properly instructed the jury that to find appellant guilty of the underlying felonies, they would be required to find that he acted knowingly. A "trial judge is not required to instruct on a culpable mental state other than that provided for the underlying felony * * *." Ziko at 837. Assignment of error ten is without merit.
In assignment of error eleven, appellant argues that the trial court erred in denying his Crim.R. 29(A) motion for acquittal. According to appellant, his supplying the heroin to the victim could not be considered the proximate cause of death because the victim voluntarily took the drugs, and appellant was not present when the heroin was injected.
Appellant relies on testimony from Dr. Cox that he was unable to find an injection mark and that the death could have been suicide. Appellant also points to the testimony of the victim's cellmate stating that he never saw the victim inject anything.
Under Crim.R. 29, the trial court "shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. A motion for judgment of acquittal under Crim.R. 29 should be granted only where the evidence is insufficient to sustain a conviction.Apanovitch at 23.
Therefore, an appellate court must apply the same standard in reviewing a denial of a motion for acquittal as if it were reviewing a challenge to the sufficiency of the evidence. When reviewing the sufficiency of the evidence to support a criminal conviction, a court must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average juror of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia
(1979), 443 U.S. 307. See, also, State v. Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported, at 4-5, 1994 WL 738452.
Appellant cites to one case from the New York Court of Appeals and two cases from the Court of Military Justice to support his proposition that an involuntary manslaughter conviction can not be sustained solely on evidence that the defendant supplied the victim with the lethal overdose of drugs. However, these cases do not reflect the law as it exists in Ohio.
In State v. Grunden (1989), 65 Ohio App.3d 777, the Third Appellate District affirmed an involuntary manslaughter conviction with an underlying offense of drug abuse. The defendant inGrunden left a gram of cocaine lying on a table near where he was sleeping. When the defendant awoke, he discovered his thirteen-month-old daughter lying on the floor unconscious. The victim subsequently died from cardiac arrest brought on by a cocaine overdose. In affirming defendant's conviction, the court concluded that:
 "On the evidence of this case, * * * reasonable minds could readily have concluded at the close of the state's case that the infant's death was proximately caused by the defendant's conduct in leaving a gram of cocaine unattended on a coffee table, well within the reach and propensities of a thirteen-month-old child." Grunden
at 783-784.
The evidence presented in the case at bar shows that appellant prepared an extremely strong hit of heroin and that he subsequently gave the loaded syringe to another inmate who was known to abuse drugs. Although Dr. Cox testified that he could not find the lethal injection mark, he also testified that the victim had numerous tattoos on his body. Some of these tattoos were located in areas where drug abusers commonly inject themselves. Dr. Cox further testified that drug abusers will sometimes tattoo those common injection areas to hide needle marks.
Furthermore, the victim's cellmate testified that he saw the victim with the syringe and that the victim slid the syringe back under the door to appellant. These facts support the trial court's refusal to grant appellant's motion for acquittal. Assignment of error of eleven is without merit.
Appellant argues in his twelfth assignment of error that the trial court erred in refusing to dismiss the indictment due to a material variance between the allegation in the indictment and the proof adduced at trial. The indictment in question alleged that the controlled substance at issue in both the corrupting another with drugs and trafficking charges was heroin. However, according to appellant, there was no evidence presented at trial showing that the victim had ingested heroin because no trace of the drug was found in the victim's system. We disagree.
In cases involving drugs, the identity of the controlled substance is a material element of the crime and the failure to prove that material element constitutes a material variance.State v. Headley (1983), 6 Ohio St.3d 475. Moreover, if there is a material variance between the allegations in the indictment and the proof at trial, the case should be dismissed. State v.Pittman (1967), 9 Ohio St.2d 186.
Both Dr. Cox and Monica Parkhurst testified that heroin is a derivative of morphine with a scientific name of diacetylmorphine. Furthermore, there was testimony that when heroin enters the blood stream, it converts back to its original form and is no longer detectable as heroin. Dr. Cox further testified that finding the high level morphine in the victim's system was consistent with a heroin overdose. In addition, there was other ample evidence that the syringe given to the victim by appellant contained heroin. Appellant's assignment of error twelve is without merit.
In his final assignment of error, appellant argues that he was subjected to cruel and unusual punishment because the trial court sentenced him to consecutive maximum prison terms on the involuntary manslaughter and corrupting another with drugs charges. Appellant contends that the trial court did not identify any underlying facts to support its conclusion that maximum consecutive sentences were warranted and that the trial court "merely tracked the language of the statute by rote recitation." We disagree.
 "[A]s a general rule, an appellate court will not review a trial court's exercise of discretion in sentencing when the sentence is authorized by statute and is within the statutory limits." State v. Hill (1994), 70 Ohio St.3d 25, 29. R.C. 2929.14(C) provides in pertinent part:
 "* * * the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
R.C. 2929.14(E)(4) allows a trial to court impose consecutive sentences for multiple offenses:
 "* * * if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court finds any of the following:
"* * *
 "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
When looking at R.C. 2929.14, we conclude that the trial court did not abuse its discretion in imposing the maximum sentence allowable under Ohio law. When a person dies as a result of another person corrupting the victim with drugs, clearly that is the worst form of the offense. Moreover, consecutive sentences were appropriate, not only because of the seriousness of the offense, but also because appellant has an extensive criminal record that includes sixteen felonies and nine misdemeanors, including a conviction for vehicular homicide. Appellant has demonstrated sufficient conduct requiring his incarceration to protect the public.
R.C. 2929.12(B) provides in pertinent part:
 "(A) Unless a mandatory prison term is required * * *, a court that imposes a sentence under this chapter upon an offender for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code. In exercising that discretion, the court shall consider the factors set forth in divisions (B) and (C) of this section relating to the seriousness of the conduct and the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing.
"(B) * * *
"* * *
 "(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
"* * *
"(C) * * *
"(1) The victim induced or facilitated the offense."
It goes without saying that death constitutes serious physical harm for purposes of sentencing. Furthermore, although appellant argues that the trial court failed to consider the conduct of the victim, the trial court's comments at sentencing clearly show otherwise. The fact that more weight was given to appellant's conduct than that of the victim does not necessarily mean that the trial court failed to consider all relevant evidence.
In addition, this court has previously held that the findings mandated by R.C. 2929.12 and R.C. 2929.14 must appear somewhere on the record of sentence, either in the judgment or in the transcript of the sentencing hearing. State v. Rone (Dec. 4, 1998), Ashtabula App. No. 98-A-0001, unreported, at 2, 1998 WL 964297. Moreover, "`[a] sentence which repeats the language of R.C. 2929.14 * * * without any indicia of a consideration of the factors set forth would be insufficient. * * * For a meaningful review, the record must contain some indication, by use of specific operative facts, that the court considered the statutory factors in its determination.'" Id., quoting State v. Kase (Sept. 25, 1998), Ashtabula App. No. 97-A-0083, unreported, at 4.
During the course of the sentencing hearing, the trial court made the following observations:
 "* * * I will incorporate the pre-sentence investigation that was done in this case into the sentencing hearing and I will state, first of all, that Count 2 carries a mandatory prison sentence while Count 3 — excuse me, Count 1 carries a presumption for prison, and the Court makes the following findings: No. 1, that the presumption of prison on Count 1 is not rebutted by anything contained in the pre-sentence investigation or the history or background of the defendant; No. 2, that consecutive terms are necessary to protect the public and adequately punish the defendant; No. 3, that consecutive terms are not disproportionate to the seriousness of the defendant's conduct and to the public danger posed by the defendant; No. 3 [sic.], that the harm is so great that a single term does not adequately reflect the seriousness of the conduct; No. 4, the offender's criminal history shows that consecutive terms are needed to protect the public, and without listing them all, they are in the pre-sentence investigation, the Court has counted up to 16 felonies and nine misdemeanors, and because of the vehicular homicide, he has been responsible for the death of at least two individuals."
In the case at bar, the trial court properly followed the sentencing scheme set forth by the General Assembly. Appellant's sentence was within the statutory limits and, as a result, the trial court did not abuse its discretion. Although the trial court's finding of fact in this matter may constitute de minimus compliance with the new sentencing requirements, we cannot clearly and convincingly conclude that appellant's sentence is contrary to law or not supported by the record.State v. Pratt (Sept. 25, 1998), Lake App. No. 97-L-208, unreported, at 3, 1998 WL 684259. Appellant's fourteenth assignment of error is without merit.
For the foregoing reasons, we conclude that appellant's assignments of error are without merit. The judgment of the trial court is affirmed.
FORD, P.J., O'NEILL, J., concur.
[1] The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that "[n]o person shall * * * be subject for the same offense to be twice put in jeopardy of life or limb." Similarly, Section 10, Article I of the Ohio Constitution provides that "[n]o person shall be twice put in jeopardy for the same offense."
[2] As noted earlier, in addition to involuntary manslaughter and corrupting another with drugs, appellant was also convicted of trafficking in heroin. At appellant's sentencing hearing, however, the trial court merged the trafficking in heroin count with the corrupting another with drugs count for purposes of imposing sentence.
[3] In his brief, appellant makes a brief argument that he should have been brought to trial within ninety days of the original indictment. Although he does not clearly state so, we assume that he is referring to the triple count provision of R.C.2945.71(E). This argument is also without merit because it is well-settled that R.C. 2945.71(E) is applicable only to those defendants held in jail in lieu of bail solely on the pending charge. State v. Brown (1992), 64 Ohio St.3d 476, 479; State v.Jones (1992), 81 Ohio App.3d 348, 350. Because appellant was already incarcerated at TCI, clearly he was not being held solely on the charges at issue in this appeal. Hence, the triple count provision in R.C. 2945.71(E) was never applicable to appellant's situation.
[4] Appellant contends that this case is analogous toThigpen v. Roberts (1984), 468 U.S. 27, in which the United States Supreme Court upheld a dismissal of an indictment where the defendant was successful in appealing his conviction and the prosecution subsequently re-indicted him on more serious charges. However, the case at bar is clearly distinguishable from Thigpen
by the mere fact that appellant had not been convicted under the original indictment before he was re-indicted on lesser charges.
[5] Appellant's proposed instruction differs from that found in Ohio's model jury instructions. 4 Ohio Jury Instructions (1997), Section 409.56, at 65, states:
 "INDEPENDENT INTERVENING CAUSE OF DEATH. If the defendant inflicted an injury not likely to produce death, and if the sole and only cause of death was (natural cause) (fatal injury inflicted by another person), the defendant who inflicted the original injury is not responsible for the death."